UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LATAYA RUFF,                                                    Docket #

                                        Plaintiff,            **COMPLAINT**

                    v.                                 Plaintiff Demands a Jury Trial

TISHMAN CONSTRUCTION CORPORATION OF
NEW YORK, TISHMAN CONSTRUCTION
CORPORATION and AECOM TECHNOLOGY
CORPORATION d/b/a AECOM,
                                    Defendants.
------------------------------------------------------------------------X

Plaintiff LATAYA RUFF, by her attorneys SEKENDIZ LAW FIRM P.C. upon information

and belief, complains of defendants as follows:


## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42

   U.S.C. §2000e et. Seq. ("Title VII"), and to remedy violations of state common law

   based upon the pendent jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966),

   and 28 U.S.C. §1367, and under the laws of the City and State of New York, seeking

   declaratory and injunctive relief and damages to redress the injuries Plaintiff has

   suffered as a result of being harassed, discriminated against, discharged, and retaliated

   against by Plaintiff's former employer on the basis of race, gender, sexual harassment,

   and retaliation.

2. Plaintiff further complains pursuant to the laws of the State of New York and the

   Administrative Code of the City of New York, seeking damages to redress the injuries

Plaintiff has suffered as a result of being harassed, discriminated against, and discharged by Plaintiff's former employer on the basis of race, gender, sex and retaliation.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 42 U.S.C. §12101 et. Seq.; 29 U.S.C. §2617; 28

   U.S.C. §1331, §1343 and pendent jurisdiction thereto.

4. The Court has supplemental jurisdiction over the claims of Plaintiff brought under the City and State law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district based upon the acts of discrimination, which occurred in New York County, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

6. Plaintiff is a resident of the State of New York.

7. Plaintiff is an African-American female.

8. Defendant, TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, (hereinafter called as TISHMAN NY) is a domestic business entity duly existing under the laws of the State of New York.

9. Defendant TISHMAN NY is a foreign business entity duly authorized to conduct business in the State of New York.

10. Defendant TISHMAN NY operates a construction business with offices at 666 5TH AVE NEW YORK, NEW YORK, 10103

11. Defendant TISHMAN NY's corporate headquarters is located at 100 PARK AVENUE NEW YORK, NEW YORK, 10017

12. Plaintiff was an employee of the defendant TISHMAN NY.

13. Defendant, TISHMAN CONSTRUCTION CORPORATION  hereinafter called as TISHMAN) is a domestic business entity duly existing under the laws of the State of New York.

14. Defendant TISHMAN is a foreign business entity duly authorized to conduct business in the State of New York.

15. Defendant TISHMAN operates a construction business with offices at 666 5TH AVE NEW YORK, NEW YORK, 10103.

16. Defendant TISHMAN's corporate headquarters is located at 100 PARK AVENUE NEW YORK, NEW YORK, 10017.

17. Plaintiff was an employee of TISHMAN.

18. Defendant, AECOM TECHNOLOGY CORPORATION (hereinafter called as AECOM) is a domestic business entity duly existing under the laws of the State of New York.

19. Defendant AECOM is a foreign business entity duly authorized to conduct business in the State of New York.

20. Defendant AECOM operates a construction business with offices in the New York City.

21. Defendant AECOM's worldwide headquarters is located at 555 SOUTH FLOWER STREET, SUITE 3700, Los Angeles, California.

22. Defendant AECOM's nationwide headquarters is located at 100 PARK AVENUE NEW YORK, NEW YORK, 10017.

23. Plaintiff was an employee of the defendant AECOM.

24. Defendant AECOM owns co-defendants TISHMAN and TISHMAN NY.

25. The defendants AECOM, TISHMAN and TISHMAN NY jointly employed Plaintiff.

26. The defendant AECOM manages, supervises and controls the defendant TISHMANøs employees, their salaries, policies and procedures concerning Labor Relations including but not limited to the issues concerning discrimination, harassment and hostile work environment at the work place.

27. The defendant AECOM manages, supervises and controls the defendant TISHMAN NYøs employees, salaries, policies, procedures concerning Labor Relations, including but not limited to the issues concerning discrimination, harassment and hostile work environment at the work place.

## PROCEDURAL HISTORY

28. On or about September 19, 2012, Plaintiff filed a complaint with EEOC.

29. On or about March 26, 2013, Plaintiff received a notice of right to sue from EEOC

30. Plaintiff filed her EEOC complaint within three hundred (300) days of her wrongful discharge and the continuing harassment.

31. Plaintiff brings this action before this Court within ninety (90) days of receiving a notice of right to see from EEOC.

## MATERIAL FACTS

32. Plaintiff comp1eted.the Non-Traditional Employment for Women's ("NEW") program for apprentices in October 2008.

33. Plaintiff has been a member of the Construction & General Building Laborers' Local 79 ("Local 79" or the "Union") since May 2009.

34. Plaintiff became a journey person in her trade in July 2012 and hold certificates of completion for 28 different specialty areas including but not limited to concrete, lire proofing and asbestos.

35. As an apprentice and now as a journey person, Plaintiff has been employed at construction jobs consistently for the past 4 (four) years.

36. In or around August of 2011, Plaintiff was sent by her Union to work at the ' construction site of the International Gem Tower, a 34-story building located at 44 W. 47th Street. in Manhattan, run by TISHMAN, TISHMAN NY and AECOM.

37. TISHMAN is a wholly owned subsidiary of AECOM.

38. The International Gem Tower (the "Project") was scheduled to last approximately two more years at the time of Plaintiff's employment with the defendants.

39. In or around August of 2011 Plaintiff was assigned as the sole apprentice on a nine (9)-person Laborer crew doing general cleaning at the work site of the Project. Plaintiff was the only female on the crew aside from Sondra Weeks, another African American woman.  Sandra Weeks were laid off regularly and at a far-greater frequency than any other member of the crew; all of who were men, which may indicate she was also being discriminated against because of her sex and/or sex plus race.

40. There was no women's "shanty" (a place to change clothes, take breaks, and warm up in the winter) at the project site when Plaintiff started working for the defendants. Plaintiff had limited and mandatory access to the men's shanty. If Plaintiff were inside the men's

shanty trying to get warm and a male co-worker wanted to come in and change, Plaintiff was forced to leave. Plaintiff had no place to change her clothes on site.

41. Plaintiff worked cooperatively, efficiently and without incident at the project site for the first three months. Plaintiff was never reprimanded, disciplined, or otherwise given a negative performance evaluation during that time.

42. In or around the second week of November 2011 while Plaintiff was pumping water as the foreman, Ralph had instructed her to do, the deputy foreman, Guy demanded Plaintiff to stop and do something else. When Plaintiff explained that she was carrying out the job Ralph had told her to do, Guy yelled at Plaintiff "***You are going to do whatever the fuck I tell you to do.***" He then took the water pump Plaintiff was using, unplugged it, and threw it violently to the ground. Everyone in the area stopped what they were doing and stared. Plaintiff walked away, upset and embarrassed. Once away from the immediate area and began to cry.

43. On the same date, Plaintiff notified Ralph of the incident. Ralph called for a meeting with Plaintiff, Guy, and die shop steward Jimmy to discuss the Incident. At the meeting, Ralph acknowledged that the comment was inappropriate and the meeting ended.

44. Ralph had supervisory authority over Plaintiff.

45. Guy had seniority over Plaintiff.

46. Shortly after, Plaintiff was on the steps cleaning debris when Plaintiff witnessed Jimmy, the shop steward, and Guy were talking to each other. Apparently they were unaware of Plaintiff's presence there. Plaintiff heard them speaking about her. More specifically Jimmy, who also had supervisory authority over Plaintiff, told Guy, "***Don't pay this bitch no mind. She thinks she's running things. She's been put in her place now.***"

47. From that point forward, Plaintiff was repeatedly subjected to sexual and racial harassment, discrimination and retaliation for reporting the Incident from her supervisors and from others in her crew.

48. When Plaintiff arrived at work the following day, Ralph explained to Plaintiff that, because Plaintiff õ***was unable to get along with the guys***," he would provide Plaintiff a separate list of duties each day to perform on her own. This new arrangement denied Plaintiff any training opportunities Plaintiff was supposed to receive as an apprentice; jeopardized her safety, and forced Plaintiff into isolation from the rest of the crew, making her feel like an outcast. Also, the list contained a heavy amount of work to be accomplished by one person in any given day. Nevertheless, Plaintiff worked hard to competently complete the work she was assigned and made every effort to get along with the crew.

49. One of Plaintifføs new assignments was to clean the menøs bathroom by herself every day. Plaintiff felt humiliated by this assignment, yet she did the job without complaint.

***50.*** Plaintiff cleaned the bathroom without incident for two or three days.  On approximately the fourth day working on the bathroom assignment, when Plaintiff came to the bathroom to perform her job, ***she found feces smeared on all the toilet seats***. The next day, and approximately every day thereafter, ***toilet paper covered in feces was strewn across the floor.*** Plaintiff had to use a mask and rubber glows to clean the mass. Upon information and belief, some of the Plaintifføs male co-workers started smearing feces on the toilet seats and scattering toilet paper covered in faces after they learned that Plaintiff was assigned to clean the female bathroom.

51. One day by the end of the first week, Plaintiff found all three toilets and the urinal clogged at the same time so that the contents backed up onto her when she flushed the toilets during cleaning. This then became a regular occurrence Plaintiff encountered.

52. During the second week after the assignment and on different days, Plaintiff found graffiti on the walls and doors of the bathroom. More specifically, the graffiti included several drawings of penises and the messages "*__Free Condoms - Magnum__*," "*__Want Your Balls to Itch Fuck a Black Bitch__*,"  "*__How Do You Keep a Black Boy Out of Your Yard? Hang One in Front. Ha! Ha! Ha!__*" ô*__How Many Kids Do You Have From Your Dad__*" "*__How Old Were You When Your Father Stopped Touching You__*.ö

53. In or around September of 2011 and on another day, Plaintiff *__encountered a hand-drawn picture of a woman with oversized muscles and a penis__* on the first floor loading dock, which is where Plaintiff deposit the construction garbage she was charged with gathering every day.

54. In or around November of 2011 while Plaintiff was near the shanty, Jimmy yelled to her, "*__Go Pick up That Rope Over There - Ya'll Are Used To Being Hung__*!" This was witnessed by the Tishman security guard stationed in a booth in front of the shanty who spoke to Plaintiff later about how wrong that was. This was just one instance of the many verbal assaults Plaintiff endured.

55. In or around November of 2011 Plaintiff was asked to clean up the construction debris. Common practice was to deposit the debris in the middle of the floor each day. On the date of the incident while Plaintiff was cleaning the debris on the thirteenth floor, the men on her crew blew the debris from the middle of the floor to the outside edge of the

floor. This forced Plaintiff to work with heavy debris on the edge of the thirteenth floor of an open building. Though Plaintiff feared for her safety, Plaintiff completed her task.

56. Plaintiff informed Roy Barnaby, the General Super for defendants about the assigned job and of her situation including informing him that her co-workers were making derogatory comments about her gender and race. His only response was to state, in substance, that Plaintiff should not worry because she was a good worker and she was not going to lose her job.

57. Plaintiff also contacted her Union's apprenticeship coordinator, Timothy Warrington, about the Incidents and subsequent events. Warrington acknowledged this was "unacceptable" and informed Plaintiff he would be sending a Business Agent ("B.A.") to represent Plaintiff on the site.

58. Approximately three weeks after the Incident, Ralph called for a second meeting with Jimmy and Plaintiff. Ralph said to the Plaintiff "***You are continuing to have trouble with the guys on the job, and if this continues, we will have to lay you off***." When Plaintiff spoke to defend herself, Jimmy called Plaintiff a "***Bitch***."

59. Upon information and belief, Ralph contacted the Equal Employment Opportunity representative at Tishman Construction, Flora Ramos, after the second meeting to inform her of the Incident and subsequent events. Ramos came to the site the morning after the second meeting to speak with Plaintiff. Plaintiff apprised her of the situation and showed her pictures of the graffiti. She then told Plaintiff "***This is a Man's Job and This is The Kind Of Stuff That Happens On Construction Sites***."

60. Approximately twenty minutes after Ramos arrived; the Union B.A. charged with representing Plaintiff, came to the site and held a meeting with Ralph, Guy, Jimmy,

Ramos and Plaintiff. Joey asked, in substance, if they could all get along and work together. At the end of the third meeting, Jimmy hesitantly shook Plaintiff's hand and apologized.

61. Joey also told management that a women's shanty needed to be put on the site immediately. Joey further indicated to management that it was inappropriate to have Plaintiff clean the men's bathroom.

62. There were no incidents of harassment, discrimination or retaliation in the first two to three days after the meeting with Ramos and Joey.

63. On approximately the fourth day after the meeting with Ramos and Joey, the harassment, discrimination and retaliation started again. Plaintiff was waiting for the hoist on the floor below where several men were working. The hoist moves through an open shaft. Upon information and belief, the men on the floor above me saw that Plaintiff was waiting for the hoist, though the structure obstructed my view of them. The men began throwing construction debris down at Plaintiff, hitting Plaintiff with rocks and debris at least twice.

64. Joey was called to the site a second time on a separate issue brought to him by Weeks.

65. Approximately three days after Joey's second visit, the word "_**Woman**_" on the door of the women's single toilet was defaced to read "_**Men**_."

66. The harassment and hostile treatment continued. Despite the multiple interventions, the men continuously harassed Plaintiff. For example, they would mock Plaintiff and mimic Plaintiff's voice. They would make rude remarks toward Plaintiff. They would call Plaintiff a "_**Bitch**_", "_**Black Bitch**_" and "_**Stupid Bitch**_." They would close the elevator doors on Plaintiff when they saw Plaintiff approach. They would nit-pick on Plaintiff's

performance. They would find any reason to report negatively about Plaintiff to the supervisors or others and fabricate stories about Plaintiff's whereabouts (e.g., they would say that Plaintiff was "missing" when she was actually somewhere else on the site cleaning.)

67. One day in late January 2012, Plaintiff was reprimanded by Jimmy for walking into the men's shanty during working hours, which Plaintiff was permitted and forced to do. The men's shanty was used as an equipment closet, and all employees had to have access to it during working hours. Plaintiff went in to get a mask and an extension cord, both of which she needed to do her job. When Plaintiff entered, Jimmy yelled at Plaintiff, "***Don't just come into the shanty. This is the men's shanty. Bitch***"

68. From the time Plaintiff was employed by defendants until her constructive discharge, Jimmy would on a daily basis call Plaintiff "***Stupid Bitch***, ***Bitch***, ***Black Bitch, Fuckin Bitch***"

69. Plaintiff left the men's shanty and went into the women's shanty, feeling incredibly upset, shaken, and defeated by the ongoing hostility. This incident was Plaintiff's breaking point. Plaintiff felt unable to tolerate the harassment any further and left the job.

70. Thereafter, the Plaintiff was placed at a new job at Harlem Children Zone (again a TISHMAN, TISHMAN NY, AECOM contract)

71. The foreman at the Harlem Children Zone, who was Plaintiff's supervisor, was aware that the Plaintiff had complaints of discrimination and harassment. More specifically, on Plaintiff's first day at work at Harlem Children Zone, the Foremen said to Plaintiff "I heard you were having problems with the guys over there (referring to Gem Tower) That's why Flora placed you over here with me."

72. After Plaintiff started working at the Harlem Children Zone, the defendants continued harassing and retaliating against the Plaintiff for complaining about gender and race discrimination. By way of example, the FOREMAN would not inform Plaintiff of her breaks and would instruct Plaintiff to work by herself. The entire (3) three weeks Plaintiff worked there she was isolated. At the end of the third week, Plaintiff was laid off for not answering her personal cell phone at work. Plaintiff was told from Union training school that she was not allowed to use her personal cell phone at work and that if she does, she would be subject to immediate termination.

73. Plaintiff was terminated from her position in retaliation of her complaints of harassment and discrimination.

74. Defendants unlawfully discriminated against and harassed the Plaintiff.

75. Defendants created an unlawful hostile work environment for Plaintiff.

76. Defendants treated Plaintiff differently because of her gender and race.

77. Defendants subjected Plaintiff to derogatory and offensive conduct.

78. Plaintiff have been unlawfully discriminated against, were humiliated, and have been degraded and belittled; and as a result suffers loss of rights, emotional distress, loss of income, earnings and personal injuries.

79. Plaintiff is being forced from her employment and claim constructive (Gem Tower) and actual discharge (Harlem Children Zone) against the Defendants.

80. Plaintiff situation at her job was intolerable as a result of the discrimination by Defendants to which they were subjected, and no reasonable person in Plaintiff's position could be expected to continue working under those conditions.

81. Throughout Plaintiff's employment with Defendants, Plaintiff would protest and complain to Defendants about this unlawful conduct.

82. Despite such complaints and protests, Defendants continued to unlawfully discriminate against the Plaintiff.

83. Plaintiff's performance was, upon information and belief, above average during the course of employment with the Defendants without the discriminatory practices.

84. During Plaintiff's employment with the Defendants, Plaintiff was regularly exposed to discriminatory, offensive and hostile work environment.

85. Defendants' actions and conduct were and are intentional and intended to harm the Plaintiff.

86. After Plaintiff protested to Defendant, Plaintiff became the subject of discriminatory retaliation by the Defendant.

87. As a result of Defendant's action, Plaintiffs felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

88. Defendants' hostile actions created a hostile working environment which no reasonable person could be expected to tolerate.

89. As a result of the Defendant's discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress.

90. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, commission, bonuses, benefits and other compensation which such employment entails, and Plaintiff have also suffered future pecuniary losses, emotional pain, suffering, inconveniences, loss of enjoyment of

life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

91. As a result of the above Plaintiff have each been damaged in the amount that exceeds the jurisdictional limits of all lower Courts.

92. The defendants conduct was intentional.

93. The defendantsøemployees, agents intended to harm Plaintiff.

94. The defendants conduct was outrageous.


## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. Executive Law § 296 provides that    "1. It shall be an unlawful discriminatory practice:  "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

97. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her gender and sex.

98. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

101. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts
>
> forbidden under this article, or attempt to do so."

104. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A FOURTH  CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

105. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

107. Defendants engaged in an unlawful discriminatory practice in violation of New York City  Administrative  Code  Title  8,  §8-107(1)(a)  by  creating  and  maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's gender, sex and retaliation.

108. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.


## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE AGAINST THE ALL DEFENDANTS

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

110. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be

unlawful discriminatory practice:

> "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

111. Defendants engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code Title 8, §8-107(1)(e) by discriminating against the Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's

employer.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE
## CODE

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

113. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be

unlawful discriminatory practice:

> "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

114. Defendants engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

115. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

116. Section 8-107(19), entitled Interference with protected rights provides that ōIt shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.ö

117. Defendants violated the above section as set forth herein.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

118. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

119. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor. Provides

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
    (1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

120. Defendants violated the above section as set forth herein.

## AS A NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

121. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

122. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2 provides that

(a) It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

123. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e-2 by actually and constructively terminating Plaintiff, creating a hostile work environment, and otherwise discriminating against Plaintiff because of her sex and sexual harassment.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

125. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

126. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e-3(a) by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

## INJURY AND DAMAGES

127. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, back pay and front pay, emotional pain, suffering, inconvenience, weight gain, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

Plaintiff hereby demands a jury of all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendant engaged in unlawful employment practice prohibited by Title VII, state common law, New York State Executive Law §296 et. Seq. and The New York City Administrative Code Title 8, §8-107 et. Seq.; and that the Defendant harassed, discriminated against, actively discharged, and retaliated against Plaintiff on the basis of gender and sexual harassment and engaged in unlawful retaliation;

B.  Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages, past and future, and benefits resulting from Defendants' unlawful termination of employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in a amount in excess of the jurisdiction of all lower courts;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendantsøunlawful employment practices.

Dated:      New York, NY
              April 5, 2013

.

By:_____s/_____

    Ismail S. Sekendiz (IS-0509)

    Attorneys for Plaintiff
    45 Broadway, Suite: 2650
    New York, NY 10006
    (212) 380-8087